UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES BROWN,

    Plaintiff,

v.                                            Case No. 17-CV-525

KEVIN KAZMIERSKI,

    Defendant.

## DECISION AND ORDER

Plaintiff Charles Brown, a Wisconsin state prisoner who is representing himself, filed a civil right complaint under 42 U.S.C. § 1983, alleging that the defendant violated his Fourth Amendment rights during his arrest. The matter is presently before me on remand from the Seventh Circuit on the question of the reasonableness of the stop and seizure of Brown. For the reasons explained below, I find that the stop and seizure of Brown did not violate the Fourth Amendment. Accordingly, I will grant the defendant's motion for summary judgment and dismiss the case.

## PROCEDURAL BACKGROUND

Magistrate Judge David E. Jones, who was then assigned to this case, allowed Brown to proceed with two claims: (1) that Racine County Deputy Sheriff Kevin J. Kazmierski conducted an unreasonable search of Brown's person when he "exposed Mr. Brown's groin area on the side of the road in plain view of passing cars," and (2) that Racine County adopted a custom or policy of "strip-searching" suspects in public. (Docket # 7 at 4–5.) On February 27, 2019, Judge Jones entered summary judgment in favor of the defendants. (Docket # 39.)

As to Brown's first claim, Judge Jones found that *Heck v. Humphrey,* 114 S. Ct. 2364 (1994), required him to assume that the stop of the car complied with the Fourth Amendment. (*Id.* at 6.) He reasoned that if he concluded that the initial *Terry* stop or arrest were unlawful, it would undermine Brown's criminal conviction. (*Id.*) Based on the assumption that the seizure was lawful, Judge Jones concluded that the search was reasonable because it was incident to a valid arrest and Brown's privates were not exposed to onlookers. (*Id.* at 6–10.) Regarding Brown's second claim, Judge Jones ruled that Brown had not shown that the county had an unlawful custom or policy of searches in public. (*Id.* at 11.)

On appeal, the Seventh Circuit found that *Heck* did not require an assumption that the traffic stop was proper. (Docket # 46 at 3.) The Seventh Circuit found that Brown's criminal judgment is based not on the traffic stop or the evidence derived from it, but on his guilty plea. (*Id.*) As such, the Seventh Circuit found that Brown's Fourth Amendment claim does not challenge the validity of that plea. (*Id.*) Consequently, the Seventh Circuit remanded this case and instructed the court to "resolve the parties' dispute about the reasonableness of Kazmierski's seizure of Brown (the impermissibility of which could also invalidate the search incident to it)." (*Id.*) The Seventh Circuit affirmed the ruling as to Racine County. (*Id.*)

After the remand from the Seventh Circuit, this case was transferred to me due to the retirement of Judge Jones. The parties then submitted supplemental briefs. (Docket # 52, 55, 57.)

**FACTS**

On March 12, 2014, Plaintiff Charles Brown and Monica C. Johnson were traveling northbound on interstate 94 in a tan Chevy Malibu. (Docket # 24, ¶ 1.) Johnson drove the vehicle while Brown sat in the passenger seat. (Docket # 32, ¶¶ 8–9.) At that same time,

2

Defendant Kevin Kazmierski was patrolling interstate 94 when he saw a tan Chevy Malibu without a front license plate and with a partially obstructed back license plate. (Docket # 24, ¶¶ 2–3, 5.) Kazmierski searched for the vehicle in the police database and found that the registered owner of the vehicle (Lakisha R. Hughes) had a suspended Wisconsin driver's license. (*Id.* ¶ 4.) Kazmierski looked inside the vehicle and saw that the driver of the vehicle (Johnson) matched the description of the registered owner of the vehicle (Hughes) so he thought that Hughes may have been driving with a suspended driver's license. (*Id.* ¶ 6.)

Kazmierski slowed down his squad car to get behind the tan Chevy Malibu to initiate a traffic stop. (*Id.* ¶ 7.) As Kazmierski slowed down, the tan Chevy Malibu also slowed down, preventing him from pulling up behind. (*Id.* ¶ 8.) Kazmierski slowed his squad car down to about 45 mph on the highway, but he still could not pull behind the tan Chevy Malibu because it also continued to slow down. (*Id.* ¶ 10.) Kazmierski thought this was suspicious because no other northbound traffic on the highway was slowing down in that manner; he thought that the driver of the tan Chevy Malibu was trying to avoid being pulled over. (*Id.* ¶¶ 9–11.) Kazmierski then pulled his squad car off the highway to let the tan Chevy Malibu pass him. (*Id.* ¶ 12.) He was then able to get behind the tan Chevy Malibu and initiate a traffic stop. (*Id.* ¶ 13.)

As Kazmierski approached the tan Chevy Malibu, he "immediately smelled a strong, overpowering odor" of air freshener coming from the halfway rolled down window. (*Id.* ¶¶ 14–17.) Kazmierski stated that he knew from his more than 18 years of experience as a deputy sheriff that air fresheners are often used to mask the smell of drugs and drug related activity, and that the strength of the air freshener in this vehicle was consistent with other traffic stops that were positive for drug activity and/or drug trafficking. (Kazmierski Dec., Docket # 26,

3

Case 2:17-cv-00525-NJ    Filed 08/20/20    Page 3 of 11    Document 59

¶¶ 2–6, 27–28.) He also knew from his more than 12 years of experience patrolling interstate 94 that drug trafficking on interstate 94 through Racine County is prevalent and that many drug traffickers use interstate 94 to transport drugs between Chicago and Milwaukee. (*Id.* ¶¶ 4–6.)

Kazmierski asked Brown and Johnson for identification and they handed over their driver's licenses. (Docket # 32, ¶¶ 8–9.) Kazmierski then asked about the registered owner of the vehicle (Hughes). (*Id.* ¶ 10.) Johnson said that she had recently bought the car from Hughes but had not had time to transfer the title to her own name. (*Id.* ¶ 11.) Kazmierski returned to his squad car and performed a criminal history check on both Johnson and Brown. (Docket # 24, ¶ 24.) The background check showed that Johnson had several convictions for possession of cocaine and marijuana; Brown similarly had been convicted of attempted possession with intent to deliver cocaine. (*Id.* ¶¶ 25–26.) Brown was let out on supervised release related to those convictions just a few days prior to the traffic stop. (*Id.*)

Deputy Kazmierski then requested that a K9 officer respond to the traffic stop for an open air sniff of the vehicle. (*Id.* ¶ 28.) He returned to the tan Chevy Malibu and told Johnson and Brown that he summoned K9 unit. (Docket # 32, ¶ 12.) About 5–10 minutes later, K9 Officer Dale Swart arrived. (Brown Dec., Docket # 31, ¶ 19.) Kazmierski instructed Brown and Johnson to exit the vehicle and stand between his squad car and the concrete barrier on the highway; they complied. (Docket # 24, ¶¶ 31–34.) Officer Swart began walking the K9 around the vehicle and the K9 altered him to drugs in the driver's side door, the passenger's side door, and the passenger's seat. (*Id.* ¶¶ 35–36.) Kazmierski then conducted a search of Brown's person and found two plastic bags with approximately 200 grams of heroin inside the tissue paper. (*Id.* ¶¶ 51, 53.)

4

# SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Id.* at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

The question on remand is the reasonableness of Kazmierski's stop and seizure of Brown. Brown argues that the stop and seizure violated the Fourth Amendment. Kazmierski argues that both were justified by reasonable suspicion.

A traffic stop is permitted under the Fourth Amendment when the officer has reasonable suspicion that criminal activity is afoot. *See United States v. Uribe*, 709 F.3d 646, 649-50 (7th Cir. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). Even reasonable suspicion that a driver is breaking a traffic law can justify a traffic stop. *Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 536 (2014). Reasonable suspicion is more than a hunch, but less than probable cause. *United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020) (citing *Terry*, 392 U.S. at 120–22.) The officer must be able to identify some "particularized and objective basis" for thinking that the person to be stopped is, or may be about to engage in, unlawful activity. *United States v. Cortez*, 449 U.S. 411, 417 (1981).

Kazmierski's decision to stop the tan Chevy Malibu on interstate 94 was supported by reasonable suspicion. He initially began investigating the tan Chevy Malibu because the vehicle did not have a front mounted license plate, as required by Wis. Stat. § 341.15(1), and it had a partially obstructed back license plate, in violation of Wis. Stat. § 341.15(2). Kazmierski searched for the vehicle in the police database and discovered that that the registered owner of the vehicle (who matched the description of the current driver) also had a suspended driver's license. Based on these specific, identifiable facts, Kazmierski had reasonable suspicion to stop the car for suspected traffic violations.

Kazmierski's reasonable suspicion did not end with the suspected traffic violations. Additional facts that Kazmierski observed heightened his suspicion. As Kazmierski attempted

6

to initiate the traffic stop on the highway, the vehicle drove in an evasive manner, making it difficult for him to execute the traffic stop. He noted that no other vehicle was driving at 45 mph on the highway and he knew from patrolling the area in the past that he was in a corridor of the highway where drug trafficking was prevalent. When Kazmierski was able to pull the vehicle over, he immediately smelled an overwhelming odor coming from the rolled down windows that was consistent with what he smelled in other traffic stops that were positive for drugs. He then discovered that neither of the individuals in the vehicle owned the vehicle, and that both individuals in the vehicle had recent drug convictions. Based on these specific, identifiable facts, Kazmierski decided to investigate possible drug activity. He then called a K9 unit that arrived 5–10 minutes later. The K9 unit alerted him to drugs in the vehicle. As Judge Jones stated in his original order, (*see* Docket # 39 at 6–10), at this point, Kazmierski had probable cause to seize Brown and conduct a search incident to it. *See also Fla. v. Harris,* 568 U.S. 237, 247 (2013) (concluding that a dog's alert provides "probable cause" to conduct a search under the Fourth Amendment.) On the totality of this record, the stop and seizure of Brown was permitted under the Fourth Amendment.

    Brown's arguments to the contrary are not persuasive. Brown argues that Kazmierski improperly converted his traffic investigation into a drug investigation by calling a K9 Unit. (Docket # 55 at 4.) He states that Kazmierski should have immediately stopped his investigation when Johnson explained that she had recently purchased the vehicle from Hughes and had not had to time to change the title. I disagree. Although the encounter began as a traffic stop, Kazmierski made other observations that reasonably lead him to be suspicious of drug activity. *See United States v. Sanford*, 806 F.3d 954, 959 (7th Cir. 2015) (concluding that police officers had "reasonable suspicion" to investigate using a K9 when

the vehicle occupants were not authorized to drive the vehicle, the vehicle was located in a known drug trafficking corridor, and criminal background checks showed prior drug offenses).

Brown notes that a strong smell of air freshener shows "nothing more than a car owner's preference for the smell of air fresheners." (Docket # 55 at 3.) It is true that there is nothing illegal or inherently suspicious about using air freshener in a car. However, the court considers the totality of the circumstances. *See Matz v. Klotka*, 769 F.3d 517, 523 (7th Cir. 2014) ("But it is axiomatic that in determining whether officers had the requisite particularized suspicion for a *Terry* stop, we do not consider in isolation each variable of the equation that may add up to reasonable suspicion."); *see Terry*, 932 F.3d at 587 ("It is judged holistically, based on the sum of all of the information known to officers at the time of the stop."). Thus, the excessive air freshener odor cannot be analyzed in isolation. In this case, Johnson and Brown were located in a drug trafficking corridor, they were driving evasively, neither individual owned the vehicle, and both individuals had prior drug convictions, in addition to the strong odor of air freshener coming from the vehicle that was consistent with other traffic stops Kazmierski performed that were positive for drugs. Based on all of these factors, Kazmierski had reasonable suspicion to investigate drug activity.

Brown also argues that Kazmierski unlawfully prolonged the stop in order to conduct an open-air sniff with a K9 unit. Brown is correct that even lawful seizures may become unlawful unless there is reasonable suspicion to justify the delay. *See United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018) ("[A] *Terry* stop violates the Constitution when an officer prolongs the stop, absent the reasonable suspicion ordinarily demanded by the Fourth Amendment."). As discussed above, Kazmierski had reasonable suspicion of drug activity.

8

Further, once called, the K9 unit arrived within 5–10 minutes. The total time elapsed from when the traffic stop began to when Brown was arrested was only 27 minutes. Based on this record, no reasonable jury could conclude that the stop was unreasonably prolonged by calling a K9 unit.

Additionally, Brown argues that there are two "disputes" of fact that preclude summary judgment. (*See* Docket # 55 at 2.) He first states that Kazmierski's description of where he was located on interstate 94 when he initially saw the tan Chevy Malibu changed between his interrogatories and his declaration. (*Id*.) Kazmierski's specific location on the highway does not affect the outcome of the suit because both parties agree that Kazmierski was "patrolling" the area when he saw the Chevy Malibu. Whether Kazmierski was .1 mile here or there does not change the fact that he saw a tan Chevy Malibu with various traffic violations.

Second, Brown states that the back license plate on the tan Chevy Malibu was not "partially obstructed." (Docket # 55 at 2.) Putting aside the lack of evidence to support this "dispute," both parties agree the tan Chevy Malibu also did not have a front license plate mounted to the car as required by Wis. Stat. 341.15(1)–(2). (*See* Brown Dec., Docket # 31, ¶ 6.) Thus, the condition of the back license plate does not change the fact that Kazmierski saw a tan Chevy Malibu with an undisputed traffic violation (i.e., lack of a front license plate).

Finally, Brown maintains that he and his companion were a minority couple driving in the middle of the day and that the stop was pretextual and Kazmierski had nothing more than a "hunch" to support his decision to stop his car and call a K9 unit. (*See* Docket # 55 at 6.) I agree with Brown that this is not a case where, for example, Kazmierski had a tip that there would be drugs in the car or where he had observed the car occupants engaged in

7

Case 2:17-cv-00525-NJ   Filed 08/20/20   Page 9 of 11   Document 59

suspicious hand to hand transactions. But reasonable suspicion is a lower standard than probable cause and the facts must be viewed in totality, not in isolation. On the totality of the record, Kazmierski had specific, identifiable facts justifying his stop and seizure of Brown. As a result, I need not reevaluate Kazmierski's search incident to it. (*See* Docket # 39 at 6–10.) Accordingly, Kazmierski is entitled to summary judgment and I will dismiss this case.

## ORDER

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Docket # 23) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 20th day of August, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge